UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

JANIE WAMPLER,     )
            )
 Plaintiff,       )
            )
v.           )  Civ. No. 2:09-CV-5
            )  (MATTICE/CARTER)
MICHAEL J. ASTRUE,    )
Commissioner of Social Security,  )
            )
 Defendant.      )

## REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382. [1]

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of plaintiff's motion for summary judgment (Doc. 8) and defendant's motion for summary judgment (Doc. 13).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

### Plaintiff's Age, Education, and Past Work Experience

Plaintiff, born in 1967, was forty years old on the date the ALJ issued his decision (Tr. 74).

---

[1] Since the relevant DIB and SSI regulations cited herein are virtually identical, citations will only be made to the DIB regulations, found at 20 C.F.R. §§ 404.1500-404.1599. The parallel SSI regulations are found at 20 C.F.R. §§ 416.900-416.999, corresponding to the last two digits of the DIB cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20 C.F.R. § 416.945).

Plaintiff had a ninth-grade education and previously worked as a waitress, prep cook, restaurant manager, dishwasher, and assembler (Tr. 35-36, 89, 93 )

Applications for Benefits

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income on December 11, 2006, alleging she became disabled on March 4, 2006 (Tr. 72-76, 82-84). She alleged she was unable to work due to myasthenia-gravis[2] and the pain associated with the disease, poor vision, loss of control of hands, ringing in her ears, hearing loss, chest and spine spasms, breathing difficulty, numbness in her right arm and hand, sharp pain under her right rib, and bone and body pain (Tr. 88, 108).

Plaintiff's applications were denied initially, upon reconsideration, and after a hearing before an Administrative Law Judge (ALJ) (Tr. 24-41, 42-50, 52-57). The ALJ issued a decision on August 22, 2008, finding that Plaintiff was not disabled because she could perform a significant number of jobs in the national economy (Tr. 8-21). When the Appeals Council denied Plaintiff's request for review (Tr. 1-3, 6-7), the ALJ's decision became the final decision of the Commissioner and the decision is now subject to judicial review. See 20 C.F.R. §§ 404.981, 416.1481.

Standard of Review - Findings of the ALJ

Disability is defined as the inability to engage in any substantial gainful activity by reason of

---

[2]A disease characterized by progressive weakness and exhaustibility of voluntary muscles without atrophy or sensory disturbance and caused by an autoimmune attack on acetylcholine receptors at neuromuscular junctions. See Medline Plus, http://www2.merriam-webster.com/cgi-bin/mwmednlm (last visited on 6/5/09)(Doc. 14, p. 2).

2

a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §423(d)(1)(A). The burden of proof in a claim for Social Security benefits is upon the claimant to show disability. *Barnes v. Secretary, Health and Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once, however, the plaintiff makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and*

3

*Human Servs*., 790 F.2d 450 n. 4 (6th Cir. 1986).

As the basis of the decision of August 27, 2008 that plaintiff was not disabled, the ALJ

made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through March 31, 2008.

2. The claimant has not engaged in substantial gainful activity since March 4, 2006, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.,* 416.920(b) and 416.971 *et seq*.).

3. The claimant has the following severe impairments: fibromyalgia, sacroiliitis and an adjustment disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity for simple, unskilled light work that does not require good peripheral vision.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on xxxxxxxxx xx, 1967, and was 38 years old, which is defined as a younger individual, age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

4

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 4, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-20).

## Issues Presented

The issue raised by Plaintiff is whether the Commissioner's decision is supported by substantial evidence. Plaintiff asserts the ALJ erred in the following four areas:

1) In evaluating the severity of Plaintiff's mental impairments and their effect on her ability to work;

2) In his evaluation of Plaintiff's physical limitations;

3) In his evaluation of Plaintiff's credibility; and

4) In failing to consider Plaintiff's impairments in combination.

## Review of Relevant Medical Evidence

A September 2004 MRI of Plaintiff's pelvis revealed unremarkable appearance of the bony structures and an incidental finding of a left sacral ala cyst, a complicated right ovarian cyst (Tr. 150-51). A June 2005 MRI of Plaintiff's lumbar spine was negative (Tr. 149, 188).

Dr. Gamal S. Boutros, M.D. treated Plaintiff from at least October 2004, about one and one-half years prior to her alleged onset of disability of March 4, 2006 (*see e.g.* Tr. 222-26).

5

In November 2006, Plaintiff established as a new patient and was seen by Cathy Shadden, FNP (Family Nurse Practitioner) (Tr. 197-98). Plaintiff reported a long-standing history of myasthenia gravis, which had been treated by Dr. Boutros, but she had not seen anyone for a year and was not on medication for the condition, and had not been on medication for it (Tr. 198). Ms. Shadden also noted Plaintiff's complaints of pain in all joints, back, chest and face, and noted that Plaintiff did not really complain of muscle weakness, but more of pain (Tr. 197). Ms. Shadden prescribed medication and planned to get Plaintiff's records from Dr. Boutros (Tr. 197).

When Plaintiff returned in December 2006, Ms. Shadden noted that she had reviewed her records from Dr. Boutros, and they indicated that there was no myasthenia gravis (Tr. 195). Ms. Shadden diagnosed chronic back and hip pain and told Plaintiff that they did not treat myasthenia gravis and if she indeed had it, she had to follow up with neurology (Tr. 195). Ms. Shadden planned to make an appointment for Plaintiff with the neurology group (Tr. 195).

Plaintiff returned to Dr. Boutros in January 2007 and reported that she received a diagnosis of myasthenia gravis in 2005, but, upon review of the records, Dr. Boutros felt that there was little evidence to support that diagnosis (Tr. 177-78). He mentioned fibromyalgia, which seemed to fit Plaintiff's clinical picture (Tr. 177). He also noted that January 2007 nerve conduction velocity (NCV) studies of Plaintiff's upper and lower extremities were normal (Tr. 181-82). Review of latency, amplitude, and conduction velocity of the sensory and motor nerves showed no evidence of neuropathy or radiculopathy (Tr. 182). It was noted that, if cervical or lumbar radiculopathy was strongly suspected, an EMG was recommended (Tr. 182). Dr. Boutros diagnosed fibromyalgia, anxiety/depression disorder, and sacroiliitis and planned to set up a

6

TENS unit for Plaintiff; he also prescribed medication (Tr. 178). Plaintiff declined an injection at that time, but stated that if the pain became worse, she would consider it at that time (Tr. 178).

Also in January 2007, Plaintiff presented for mental health counseling with Bill McFeature, Ph.D. (Tr. 254-59). Somatoform and panic disorders were indicated as "rule out" diagnoses (Tr. 257). Further evaluation was warranted and it was also recommended that Plaintiff follow-up with Ms. Shadden (Tr. 257).

In February 2007, Plaintiff returned to Dr. Boutros (Tr. 175-76). It was noted that Plaintiff was treated for sacroiliitis with an injection without benefit (Tr. 175). After examination, Dr. Boutros diagnosed suspected right sacroiliitis, iliopsoas tendinitis, trochanteric bursitis "all ruled out;" suspected somatoform disorder; and fibromyalgia (Tr. 176).

Dr. Karl Konrad, M.D. performed a consultative evaluation of Plaintiff in March 2007 (Tr. 189-91). He noted that he did not believe that he received full cooperation from Plaintiff during the exam (Tr. 189). After examination, Dr. Konrad reported that the physical exam was remarkable for questionable abnormal gait; there was hepatomegaly (Tr. 191). He concluded that, based on objective findings of exam and/or additional studies, Plaintiff had no impairment-related physical limitations (Tr. 191).

Plaintiff saw Ms. Shadden again in March 2007 and told her that the neurologist decided that she had fibromyalgia (Tr. 193). She had a TENS unit and the neurologist was managing her medications (Tr. 193). Plaintiff reported that the TENS unit was really helping, but movement

7

made it worse (Tr. 193). Ms. Shadden diagnosed low back and right leg pain and noted Plaintiff would continue to see Dr. Boutros for her pain issues (Tr. 193).

Later in March 2007, Plaintiff returned to Dr. Boutros, who reported that nerve conduction studies showed no evidence of peripheral nerve injury or disease (Tr. 220-21). At that time, Dr. Boutros diagnosed fibromyalgia, bipolar disease, somatoform disorder, and mood swings (Tr. 221).

Dr. James Hudson, M.D., a state agency physician, reviewed the record evidence in March 2007, and concluded Plaintiff could perform medium exertional work, but had a visual limitation of limited far acuity (Tr. 203-10). Dr. Misra, also a state agency physician, reviewed the record evidence in July 2007 and also concluded Plaintiff could perform medium exertional work, but had limited far acuity in her vision (Tr. 211-18).

In July 2007, Dr. McFeature noted Plaintiff's diagnosis as adjustment disorder with mixed emotional features and reported that she appeared quite agitated with her reported medical condition (Tr. 293-94). They discussed coping strategies (Tr. 293). Dr. McFeature planned to see Plaintiff every three weeks for individual psychotherapy to address her distress in dealing with her reported medical condition (Tr. 293). In August 2007, Dr. McFeature allowed Plaintiff to ventilate her frustration and again planned to see her every three weeks to address her distress with physical symptoms of reported mild - moderate pain (Tr. 291-92).

When Plaintiff saw Dr. McFeature in September 2007, he noted that she was pursuing disability for her reported medical condition (Tr. 287-88). Later in September 2007, Plaintiff expressed frustration and irritability associated with her present partner relationship (Tr. 286-87).

8

She and Dr. McFeature processed her frustrations with life in general and Dr. McFeature provided Plaintiff with insight into dealing with her stressors (Tr. 286).

In October 2007, Dr. McFeature noted that Plaintiff reported mild depressive symptomatology associated with health issues; she believed she had myasthenia (Tr. 285). They processed Plaintiff's feelings and thoughts associated with her perceptions and belief that she had an immunodeficiency disorder and was also caught up in an unhealthy partner relationship (Tr. 285). Dr. McFeature validated Plaintiff's feelings (Tr. 285). Later in October 2007, Dr. McFeature observed that Plaintiff was stressed out over her lifestyle and partner relational problems, and she believed she had an immune deficiency disorder (Tr. 284). They processed Plaintiff's stress levels and the need to make changes in her life (Tr. 284).

In November 2007, Dr. Stephen L. Wayne, M.D. saw Plaintiff for a neurologic consult (Tr. 231-36). He noted that Dr. Boutros had done an enormous work-up, including MRI of Plaintiff's brain, and studies were all generally normal (Tr. 231). After examination, Dr. Wayne diagnosed ocular myasthenia and reported that, despite Plaintiff's symptoms, neurologic examination was normal and he saw no signs to suggest active myasthenia gravis and did not think that myasthenia gravis explained the majority of her complaints (Tr. 235). He also diagnosed psychogenic pain, fibromyalgia, insomnia, depression, and anxiety disorder (Tr. 235). Dr. Wayne instructed Plaintiff to follow-up with Ms. Shadden regarding the variety of neurologic complaints, for which he was unable to achieve a diagnosis or treatment (Tr. 235). He thought that ongoing psychological counseling and treating Plaintiff's mood disorder would likely be of benefit (Tr. 235).

9

A December 2007 x-ray of Plaintiff's right knee was negative for acute abnormality (Tr. 238-39).

When Plaintiff saw Dr. McFeature in December 2007, she told him that Dr. Wayne diagnosed myasthenia (Tr. 278). They processed ways to relax and stress-reduction techniques were utilized to address Plaintiff's coping with reported medical condition (Tr. 278).

In January 2008, Dr. McFeature reported Plaintiff's diagnosis as mood disorder due to a general medical condition and allowed Plaintiff to ventilate her feelings of frustration regarding her health-related issues (Tr. 277). Plaintiff reported mild - moderate pain at times, associated with her reported medical condition (Tr. 277). They discussed ways to cope with her reported pain syndrome and Dr. McFeature noted that Plaintiff was also dealing with external stressors with her partner (Tr. 277).

Jane Dresser, Advanced Practice Registered Nurse, (APRN-BC), completed a "Medical Assessment of Ability to do Work-Related Activities (Physical)" form in February 2008 and indicated that Plaintiff could lift ten pounds occasionally and less than two pounds frequently (Tr. 243-44). Ms. Dresser also reported that Plaintiff could stand/walk a total of less than one hour, and sit for two hours total, in an eight-hour day (Tr. 243). She thought Plaintiff also had postural, manipulative, and environmental restrictions (Tr. 244). When asked for medical findings to support her assessment, Ms. Dresser wrote that she had observed Plaintiff's pain and muscle fatigue, that sustained walking and standing were not possible because pain became unmanageable, and that Plaintiff must continually change positions at one-to-two-minute intervals (Tr. 243-44). She also referred to neurological testing, but did not report any findings

10

(Tr. 244). Ms. Dresser opined that regular work was simply not possible and noted that Plaintiff was significantly frustrated with the intensity of her pain and limitations (Tr. 244).

In March 2008, Plaintiff and Dr. McFeature processed her frustration, anger, and hurt with life in general and he provided insight into perspective of her life and instilled strength (Tr. 275).

In June 2008, Arthur Stair, M.A., LPE, performed a psychological consultative evaluation of Plaintiff (Tr. 297-306). After interview and examination, Mr. Stair and Dr. Stanley, a psychologist, diagnosed chronic moderate adjustment disorder with disturbances in emotions and conduct (Tr. 302). They concluded that Plaintiff was fully capable of understanding simple information or directions with the ability to put it to full use in a vocational setting (Tr. 301). Plaintiff's ability to comprehend and implement multi step complex instructions likely ranged from marginal to adequate (Tr. 301). According to Mr. Stair and Dr. Stanley, Plaintiff's ability to maintain persistence and concentration on tasks for a full workday and workweek was mildly to moderately impaired given Plaintiff's moderate adjustment disorder with disturbances in emotions and conduct (Tr. 302). They indicated that Plaintiff's social relationships were moderately impaired due to her intense irritability and withdrawal from others (Tr. 302). Mr. Stair also completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" form and reported that Plaintiff had mild limitations in her ability to do three of the ten mental work-related activities listed on the form and moderate limitations in her ability to perform the remaining seven activities (Tr. 303-05).

### Vocational Evidence

At the administrative hearing, the ALJ posed a hypothetical question to Donna Bardsley,

the vocational expert, describing someone of Plaintiff's age, education, and past work experience, who was restricted to performing the demands of light work, involving lifting of twenty pounds occasionally and ten pounds frequently; that did not require good peripheral vision and was simple and unskilled (Tr. 37). Ms. Bardsley testified that such an individual could perform jobs such as cashier, sales clerk, information clerk, stock clerk, and cleaner, which numbered about 5,275 in the regional economy and over ten million in the national economy (Tr. 38).

<u>Analysis</u>

1) Did the ALJ err in evaluating the severity of Plaintiff's mental impairments and their effect on her ability to work?

Plaintiff contends the ALJ failed to accord the proper weight to the severity of Plaintiff's mental impairments. The responsibility for weighing the record evidence, including physicians' opinions, and resolving conflicts therein rests with the ALJ. *See Richardson*, 402 U.S. at 399 ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (it is the ALJ's duty to resolve conflicts in the evidence). As Plaintiff argues, it is well settled that opinions of treating physicians, because of their longitudinal history of caring for patients, are entitled to great weight and are generally entitled to greater weight than contrary opinions of consulting physicians who have examined plaintiffs only once. *Walters v. Commissioner of Social Security,* 127 F.3d 525, 529-30 (6th Cir. 1997); *Ferris v. Secretary of Health and Human Services*, 773 F.2d 85, 90 (6th Cir. 1985); *Harris v. Heckler*, 776 F.2d 431, 435 (6th Cir. 1985). *See also*, 20 C.F.R. § 404.1527(d)(2) (giving more weight to the opinions of

12

treating sources generally). 20 C.F.R. § 404.1527(d)(2) sets forth factors to be considered: (1) the frequency of examination and the length, nature and extent of treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. However, the Commissioner is not bound by a treating physician's assessment in all situations. The weight to be given the physician's opinion depends on the extent to which it is supported by objective medical signs and laboratory findings and to the extent that it is consistent with the record as a whole. 20 C.F.R. §§404.1527(d), 416.927(d); *accord Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). The Commissioner may reject unsupported opinions or opinions inconsistent with other substantial evidence in the record and resolve conflicts in the evidence. *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). *See also* 20 C.F.R. §§ 404.1527(d) and 416.927(d). Furthermore, physicians' opinions about the ultimate issue of disability are entitled to no particular weight; rather, this issue is reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1) (The Commissioner is responsible for making the determination about whether a claimant meets the statutory definition of disability); Social Security Ruling (SSR) 96-5p.

Turning to the evidence in this case, Dr. Stanley's and Mr. Stair's opinion does not support any additional mental limitations on Plaintiff's ability to work. Mr. Stair completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" form and reported that Plaintiff had mild limitations in her ability to do three of the ten mental work-related activities listed on the form and only moderate limitations in her ability to perform the remaining seven

13

activities (Tr. 303-05). He did not find that she had any marked limitations (Tr. 303-05). Further, in their narrative report, Mr. Stair and Dr. Stanley explicitly concluded that Plaintiff was fully capable of understanding simple information or directions with the ability to put it to full use in a vocational setting (Tr. 301). According to them, Plaintiff's ability to comprehend and implement multi step complex instructions likely ranged from marginal to adequate (Tr. 301). Mr. Stair and Dr. Stanley also found that Plaintiff's ability to maintain persistence and concentration on tasks for a full workday and workweek was only mildly to moderately impaired given Plaintiff's moderate adjustment disorder with disturbances in emotions and conduct (Tr. 302). They indicated that Plaintiff's social relationships were only moderately impaired due to her intense irritability and withdrawal from others (Tr. 302). In this case, I conclude the ALJ had a reasonable basis to conclude Plaintiff did not suffer from debilitating mental impairments.

The contemporaneous progress notes of Plaintiff's treatment with Dr. McFeature also fail to show that she experienced any mental limitations not already accommodated by the ALJ's restriction to simple unskilled light work. Although Plaintiff experienced some adjustment problems in response to her physical condition and problematic life circumstances, such as relationship issues, there was no indication that any mental condition was disabling or resulted in disabling symptoms and Plaintiff has failed to show otherwise (Tr. 275, 277-78, 284-88, 291-94). In light of the opinion of Mr. Stair and Dr. Stanley and the contemporaneous treatment notes of Plaintiff's mental health visits, I conclude there is substantial evidence to support the ALJ's finding that Plaintiff's mental impairments were not disabling.

14

2) Did the ALJ err in his evaluation of Plaintiff's physical limitations?

Plaintiff next argues the ALJ failed to properly consider the impact of Plaintiff's fibromyalgia and sacroiliitis on her ability to work. Plaintiff notes the ALJ's conclusion was contrary to the opinion of APRN-BC Jane Dresser and Plaintiff's allegations of pain (Doc. 9, p. 16). The Commissioner in response argues the ALJ considered all the record evidence, including the various treatment notes and physicians' and psychologists' opinions and reports, in finding that Plaintiff had the residual functional capacity to perform a range of light work and the notes and reports from her treating and examining physicians do not necessarily support Plaintiff's claim that she was unable to work. Therefore, the ALJ reasonably concluded that Plaintiff could perform a range of light work.

In his discussion of the record evidence, the ALJ explained the weight he gave to the record opinions. For example, he discussed Dr. Konrad's opinion that Plaintiff had no impairment-related physical limitations (Tr. 189-91) and explained that he gave it little weight because Dr. Konrad did not appear to consider Plaintiff's pain from fibromyalgia (if she indeed had it) (Tr. 17). I note the physical examination of Dr. Konrad was found to be remarkable for questionable abnormal gait (Tr. 191). Dr. Konrad also felt Plaintiff did not give full cooperation during the examination (Tr. 189)

The ALJ also considered Ms. Dresser's opinion that Plaintiff was unable to sit, stand, and walk for a total of eight hours per day (Tr. 243-44), and explained that he gave it little weight for several reasons (Tr. 17). First, Ms. Dresser was not an acceptable medical source, as she is an

advanced practice registered nurse (Tr. 17). *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). Second, there is no indication in the record that Ms. Dresser ever treated or examined Plaintiff, or any indication of her relationship to Plaintiff (Tr. 17). Finally, when asked to provide medical findings to support her assessment, Ms. Dresser only reported her own observations and Plaintiff's subjective complaints (Tr. 243-44). As such, her opinion was entitled to little weight. See 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").

The ALJ considered the opinion of the state agency reviewing physicians that Plaintiff could perform medium exertional work (Tr. 203-10, 211-18), however, he also considered Plaintiff's allegations of pain and other limitations and, instead of adopting their shared opinion, found Plaintiff was further limited (Tr. 17). In light of the foregoing, the ALJ reasonably concluded Plaintiff could perform a range of light work and his finding is supported by substantial evidence in the record. The Commissioner contends the record does not support a finding that her fibromyalgia was disabling. As the Commissioner argues, while the court in *Preston v. Secretary of Health & Human Services*, 854 F.2d 815, 820 (6th Cir. 1988), noted the unique nature of fibrositis, and explained that physical examinations usually yield normal results and there were no objective tests to confirm the disease, 854 F.2d at 817-18, it does not necessarily follow that every case of fibrositis or fibromyalgia is disabling and the *Preston* case should not be read as imposing a blanket rule that it is, as Plaintiff seems to suggest. In this case, the ALJ considered the record evidence, found Plaintiff's fibromyalgia was a severe impairment,

16

and reasonably accommodated her resulting functional limitations by limiting her to a range of light work. *See Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) ("it is not enough to show she had received a diagnosis of fibromyalgia . . . since fibromyalgia is not always (indeed, not usually) disabling."); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (citation omitted) ("Some people may have such a severe case of fibromyalgia as to be totally disabled from working, . . . but most do not and the question is whether Sarchet is one of the minority.").

Looking at the record as a whole, I conclude there was substantial evidence to support the ALJ's evaluation of Plaintiff's residual functional capacity in light of Plaintiff's physical limitations.

3) Did the ALJ err in his evaluation of Plaintiff's credibility?

Next, Plaintiff argues the ALJ failed to consider plaintiff's allegations of pain or other symptoms (Doc 9, Plaintiff's Brief pp.16-19). However, I agree with the Commissioner, the ALJ did properly consider her allegations of pain. The ALJ cited the proper regulatory provisions and rulings applicable to the credibility analysis, considered Plaintiff's allegations in light of all the other record evidence, and concluded that her subjective complaints were not supported by the documentary evidence. Significantly, a claimant must present more than her subjective complaints of disability. See 20 C.F.R. §§ 404.1529, 416.929 (". . . statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings . . ."); Social Security Ruling (SSR) 96-7p ("No symptom or combination of symptoms can be the basis of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence

of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.") The ALJ's analysis follows:

> The undersigned has also considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p.
>
> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.
>
> Although the claimant alleges diagnosis of myasthenia gravis, there is no available medical evidence documenting this diagnosis. Testing, including an EMG in May 2004 showed no evidence of myasthenia gravis, neuropathy, or radiculopathy. Furthermore, the claimant does not take, not has she ever taken, medications for myasthenia gravis.
>
> When evaluated by a neurologist in January 2007, the claimant was diagnosed with fibromyalgia and sacroiliitis. Although she reported continued double vision, visual examination was within normal limits, with visual fields full of confrontation. Ocular movements full with no gaze or deviation; and symmetrical facial movements and sensation. The claimant had 5/5 strength in all extremities; normal muscle tone and flexor plantar response; and no decreased pinprick, position, temperature, or vibratory sensation to the hands or feet with the exception of the right hand decreased pinprick sensation. The claimant was prescribed a TENS unit which she stated helped her pain. She declined an injection, stating that the pain was not that bad. Nerve conduction studies of the upper and lower extremities and an

18

MRI in 2007 were also within normal limits.

When evaluated by another neurologist at the end of 2007, it was noted that, despite the claimant's subjective symptoms of myasthenia gravis, including difficulty with swallowing, choking, trouble holding the head up, diffuse weakness, fatigue and intermittent double vision, neurological examination was completely within normal limits, with no signs to suggest active myasthenia gravis. Again, the diagnosis of fibromyalgia was given.

Although the claimant has been diagnosed with fibromyalgia, based on alleged symptoms and evidence of trigger points, these trigger points are not described as "pain" trigger points. Although the undersigned recognizes that the claimant may have some pain and limitations as the result of her fibromyalgia, if she indeed has it, the record fails to show that it is of the severity as to preclude all work activity.

Tr. 18.

I conclude the ALJ properly weighed the evidence of record and properly evaluated Plaintiff's credibility.

4) Did the ALJ fail to consider Plaintiff's impairments in combination?

Finally Plaintiff argues the ALJ failed to consider Plaintiff's impairment in combination. Plaintiff notes Title 42, U.S.C. § 423(d)(2)(c) requires the Commissioner to consider the combined effects of impairments. *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). Plaintiff is correct in arguing established Sixth Circuit law requires the ALJ to consider the combined effects of a claimant's impairments in determining whether he or she is disabled. *See Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1077 (6th Cir. 1992) (holding that "the ALJ is to consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to render the claimant disabled"). However, I conclude the ALJ did consider the evidence in combination. In his opinion, the ALJ specifically notes he has considered the entire record in finding Plaintiff has the

19

residual functional capacity for simple, unskilled light work that does not require good peripheral vision. His assessment of the record in combination can be readily seen:

> In making this finding, the undersigned has considered all opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. With regard to physical impairments, the undersigned has considered the objective medical findings of Cathy Shadden, Dr. Boutros, Dr. Konrad and Dr. Wayne in finding that the claimant can perform light work that does not require good peripheral vision. The undersigned has also considered the opinion of Dr. Konrad, that the claimant had no impairment-related physical limitations. However, this opinion is given little weight as Dr. Konrad did not consider the claimant's pain. The claimant is expected to have pain as a result of her fibromyalgia, if she indeed has it. Although the state-agency medical consultants opined that the claimant could perform medium work, again, the undersigned has considered the claimant's allegations of pain and other limitations in limiting her to light work that does not require good peripheral vision. The undersigned has also considered the opinion of Ms. Dresser. However, little weight is given to her opinion as she is not considered to be an acceptable medical source. Furthermore, there is no indication in the record that she has ever treated or examined the claimant. Her opinions are based mainly on subjective complaints and are not consistent with the overall medical evidence of record. With regard to mental impairments, the undersigned has considered the objective medical findings of the claimant's primary care provider and treating psychologist, Dr. McFeature in finding that the claimant can perform simple, unskilled work. The undersigned has also considered the opinions of Mr. Stair which are generally consistent with the above-stated residual functional capacity.

Tr. 17.

The record reflects the ALJ did in fact consider all of the evidence in combination. On the basis of the record as a whole, I conclude there was substantial evidence to support the ALJ's decision. At the administrative hearing, the ALJ posed a hypothetical question to Donna Bardsley, the vocational expert, describing someone of Plaintiff's age, education, and past work experience, who was restricted to performing the demands of light work, involving lifting of twenty pounds occasionally and ten pounds frequently; that did not require good peripheral

vision; and was simple and unskilled (Tr. 37). Ms. Bardsley testified that such an individual could perform jobs such as cashier, sales clerk, information clerk, stock clerk, and cleaner, which numbered about 5,275 in the regional economy and over ten million in the national economy (Tr. 38). The ALJ reasonably relied on Ms. Bardsley's testimony in finding Plaintiff could perform a significant number of jobs in the national economy. Since the ALJ relied on vocational expert testimony in response to a hypothetical question which accurately reflected Plaintiff's credible limitations, his decision that Plaintiff was not disabled because she could perform a significant number of jobs in the national economy is supported by substantial evidence. *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987).

<u>Conclusion</u>

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence in the record to support the findings of the ALJ and decision of the Commissioner and neither reversal nor remand is warranted on these facts. Accordingly, I RECOMMEND:

(1)  The plaintiff's motion for summary judgment (Doc. 8) be DENIED.

(2)  The defendant's motion for summary judgment (Doc. 13) be GRANTED.[3]

(3)  The case be DISMISSED.

Dated:  December 17, 2009        *s/William B. Mitchell Carter*
                                UNITED STATES MAGISTRATE JUDGE

---

[3]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985).  The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general.  *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

22